

Transcript of **Demone Lee**

Tuesday, July 5, 2022

*Cathy Carter v. Paul Howard*

www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO (800.367.3376)
Scheduling@Trustpoint.One

Reference Number: 118469

1                UNITED STATES DISTRICT COURT

            FOR THE NORTHERN DISTRICT OF GEORGIA

2

     CATHY CARTER,                    )

3                                     )

          Plaintiff,                  )

4                                     )

        vs.                           )   CIVIL ACTION FILE NO.

5                                     )   1:20-CV-01674-TWT-JSA

     PAUL HOWARD, IN HIS INDIVIDUAL   )

6    AND OFFICIAL CAPACITY,           )

                                      )

7          Defendants.                )

8

9                     DEPOSITION OF:

10                     DEMONE LEE

11     Being taken pursuant to stipulations herein:

12          Before Debbie C. Hennings, CCR, RPR

13               Tuesday, July 5, 2022

14             Commencing at 2:32 p.m.

15

16

17

18

19

20          All parties, including the court reporter,

21      appeared remotely.

22

23

24

25   Job No. 118469

Trustpoint.One   Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1          I N D E X   T O   E X A M I N A T I O N S

 2

 3    DEMONE LEE

             BY MR. WILLIAMS  . . . . . . . . . . . . . .  11

 4
                          * * *

 5

 6

 7            I N D E X   T O   E X H I B I T S

 8    Plaintiffs'

      Exhibit No.            Description              Page

 9

      1       State Court Criminal Case Inquiry       11

10

      2       Accusation and Counts                   16

11

      3       Final Disposition                       17

12

13

14

15

16

17    COURT REPORTER NOTE:  All exhibits submitted

      electronically.

18

19                          * * *

20

21

22

23

24

25
```

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1                    A P P E A R A N C E S
 2     ON BEHALF OF THE PLAINTIFF:
 3              MARIO BERNARD WILLIAMS, ESQUIRE
                HDR Law Firm
 4              44 Broad Street NW
                Suite 200
 5              Atlanta, Georgia  30303
                404-577-0080
 6              mwilliams@hdrattorneys.com
 7     ON BEHALF OF THE DEFENDANT:
 8              NOAH GREEN, ESQUIRE
                Henefeld & Green
 9              3017 Bolling Way NE
                Suite 129
10              Atlanta, Georgia 30305
                404-841-1275
11              ngreen@henefeldgreen.com
12                       * * *
13              (Pursuant to O.C.G.A. Section 9-11-29(a) and
14         (d) and Section 15-14-37(a), (b) and (c), the court
15         reporter disclosure statement is tendered at the
16         end of the transcript.)
17                       * * *
18
19
20
21
22
23
24
25
```

1          COURT REPORTER:  If I could have counsel stipulate

2      on the record that there is no objection to the court

3      reporter swearing in the witness remotely.

4          MR. WILLIAMS:  No objection from the plaintiff.

5          MR. GREEN:  No objection.

6                    DEMONE LEE,

7  being first duly sworn, was examined and testified as

8  follows:

9                    EXAMINATION

10  BY MR. WILLIAMS:

11      Q.   How ya doing, Attorney Lee?  If you could just

12  say your full name for the record, I would appreciate

13  it.

14      A.   Yes, sir.  DeMone Lee.

15      Q.   And how do you spell DeMone?

16      A.   D-E-M-O-N-E.

17      Q.   And then Lee, L-E-E?

18      A.   Yes, sir.

19          MR. WILLIAMS:  This will be the deposition of

20      DeMone Lee, for all permissible and allowable

21      purposes under federal law and other law that

22      governs this deposition.

23  BY MR. WILLIAMS:

24      Q.   Mr. Lee, my understanding is you are an attorney,

25  correct?

1        A.    That's correct.

2        Q.    So I'm going to kind of skip the whole rules

3    of engagement, as they say, and kind of get to the point

4    with you.

5        A.    Yes, sir.

6        Q.    I'm going to orient you to something and then

7    I'll just ask a few questions and I'll turn it over to

8    my colleague and try to get you out of here.

9              This is case in which Cathy Carter has filed a

10   lawsuit against Paul Howard making various allegations.

11             One of the issues is your -- that the

12   plaintiff believes is an issue that could be relevant in

13   this case, depending on how the facts shake out, is your

14   representation of one of Cathy Carter's sons.  His name

15   is Gabriel Miller.  Are you familiar with Gabriel

16   Miller?

17       A.    I am.

18       Q.    And so I'm going to ask you just some

19   questions about your background, when you worked with

20   the district attorney's office and when you went into

21   private practice, get a few questions about your

22   representation of Mr. Miller and move on.

23       A.    Okay.

24       Q.    Did you work for the Fulton County District

25   Attorney's Office?

1        A.    Yes.

2        Q.    What years did you work with the Fulton County

3    District Attorney's Office?

4        A.    I believe it was 2011 to 2016.

5        Q.    At the time that you worked for the Fulton

6    County District Attorney's office from 2011 to 2016, was

7    Paul Howard the Fulton County district attorney?

8        A.    Yes.

9        Q.    Did you report directly to Paul Howard?

10       A.    There -- that wasn't necessarily the command

11   structure, but ultimately he was the one with the last

12   say-so, yes.

13       Q.    When you were brought on in 2011, what was

14   your actual title while working at the district

15   attorney's office?

16       A.    I was a senior assistant district attorney.

17       Q.    And did that title ever change from 2011 to

18   2016?

19       A.    Yes.

20       Q.    Okay.  Did --

21       A.    Go ahead, I'm sorry.

22       Q.    No, go ahead and explain when it changed.

23       A.    I can't recall exactly when, probably around

24   the three-year mark, the third-year mark of my tenure,

25   it changed from senior assistant district attorney to

1    chief senior assistant district attorney.

2         Q.   And did it stay as chief senior assistant

3    district attorney through the time 2016?

4         A.   To my understanding, yes.  Now, the county may

5    have had me titled as deputy district attorney, but I

6    don't know that my role coincided with that per se.

7         Q.   Okay.  And during your tenure as a lawyer at

8    the Fulton County district attorney's office, did you

9    come into frequent contact with Paul Howard in his role

10   as the district attorney?

11        A.   There were -- initially when I started out at

12   the trial division level, it was rare that I had contact

13   with Mr. Howard.

14             As my role responsibilities as it relates to

15   the severity of cases changed, I began to directly

16   report to him more frequently.

17             For example, when I was in the Crimes Against

18   Women and Children Division, we would have more frequent

19   meetings, myself and my direct supervisor, with

20   Mr. Howard.

21             And the same when I was in the Major Case

22   Unit, same level of frequent contact.  Oftentimes, more

23   often than not, it's with a supervisor and Mr. Howard.

24             And then in the Public Integrity Unit I can't

25   even think of a time that I met with him without the

1    direct supervisor.  So there was always meetings amongst

2    us all with Mr. Howard in these three units in

3    particular.

4         Q.   Okay.  Now, after you left the district

5    attorney's office in 2016, what type of professional

6    career did you pursue?

7         A.   I was a solo practitioner.  So initially

8    speaking, I was pretty much taking everything that came

9    through the door.  I was trying to build a practice.

10        Q.   Okay.  And what do you currently -- are you

11   currently a solo practitioner?

12        A.   I am.

13        Q.   Okay.  Do you have any partners?

14        A.   No.

15        Q.   Okay.  Now, I want to pull up --

16             MR. WILLIAMS:  And do you, Madam Court

17        Reporter, do you have the DeMone Lee exhibits?

18             COURT REPORTER:  Not handy right now but I can

19        get them.  They have been emailed.

20   BY MR. WILLIAMS:

21        Q.   I'm going to do a share screen.  So right now

22   on the shared screen --

23             MR. WILLIAMS:  Noah, do you see the shared

24        screen?

25             MR. GREEN:  I do.

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1   BY MR. WILLIAMS:

 2        Q.   DeMone, do you see the shared screen?

 3        A.   Yes.

 4        Q.   I want to ask you, do you know who Gabriel

 5   Vonzell Miller is?

 6        A.   That's Cathy Carter's son.

 7        Q.   Yes.  Have you ever represented him?

 8        A.   I have.

 9        Q.   Okay.  And how did you first come -- who

10   contacted you about representing Gabriel Miller, the

11   very first time you represented him?

12        A.   The very first time I represented him,

13   Mr. Howard contacted me and I took it as a referral to

14   build my practice.

15            Because there was -- I didn't have any contact

16   with Cathy Carter that I recall.  All my contact was

17   with Gabriel Miller.

18        Q.   Okay.  And who paid you for that initial first

19   representation of him after Mr. Howard referred you?

20        A.   Well, that's a sore spot because Gabriel

21   Miller signed an engagement, of which he did not pay me

22   fully for.  I don't even know -- I can't even recall if

23   he made a payment, to be honest with you.

24        Q.   Okay.  Tell me to the best of your knowledge

25   the conversation that you had with Mr. Carter about the
```

1    referral of Gabriel Miller to you?

2        A.    You said Mr. Carter?

3        Q.    I mean Mr. Howard.  Tell me how the

4    conversation you had with Paul Howard, about the

5    referral of Gabriel Miller to you for representation.

6        A.    Sure.  He just said, you know, hey, man, we

7    have -- you have a former colleague, Cathy Carter; her

8    son got in trouble and wanted to see if this is a case

9    that you want to take on, can help out.

10           I said yes, and I contacted Gabriel Miller.  I

11   don't recall -- I see this disposition here.  I don't

12   recall this being the case that I represented him for

13   initially.

14           There were a few cases.  The case that I

15   remember initially representing him on was a petty theft

16   charge.  It may not be petty theft, but it was a theft

17   charge -- theft by shoplifting.

18           This right here was a subsequent case.  I do

19   recall this one.  This was a subsequent case of which --

20   because he did not pay me for the first case, the theft

21   case, I really did not want to represent him for the

22   second case.

23           But Cathy Carter kept calling me and basically

24   trying to get me to step in and represent him.  And I

25   really did not want to, but I ended up doing it at the

1   urging of some colleagues saying I needed to help out.

2       Q.   Okay.  What colleagues urged you to help out?

3       A.   If I recall correctly, my friend Ernest

4   Nesmith and -- he's the only one I can think of,

5   actually, that did.

6       Q.   Did Paul Howard urge to help out?

7       A.   After I refused Cathy Carter's calls,

8   eventually he called me and said, hey, man, if you mind,

9   could you please help him out one more time.

10      Q.   So this is the second case that you didn't

11  want to be involved in?

12      A.   That's correct.

13      Q.   Let me see if I can pull up the first one.

14  But you ended up representing him on this case that's

15  represented by Plaintiff's Exhibit No. 1?  I'm going to

16  mark this as Plaintiff's Exhibit No. 1.

17      A.   I did, I did.  Cathy Carter was a handful to

18  the extent that she interfered with my representation

19  of him in this case, yeah.

20          (Plaintiff's Exhibit No. 1 marked.)

21  BY MR. WILLIAMS:

22      Q.   We're going to get to that.  Let me pull up

23  another one.  I want to make sure I get a -- do you see

24  that on the shared screen?

25      A.   Uh, that's the second case.

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1          Q.    That's the second case, okay.   Might not have

2    that first petty theft case.   It was a petty theft case,

3    right?

4          A.    Yeah, Clayton County as well.   And I say petty

5    theft.   That's me kind of hearkening back to my days as

6    a prosecutor.   I believe it was theft by shoplifting.

7          Q.    Okay.   Let me ask you this:   At any time -- I

8    know you just testified that when you refused to get

9    involved in the second case, Paul actually called and

10   said, hey, man, can you do me a solid and get involved,

11   correct?

12         A.    He didn't say, can you do me a solid.   He

13   said, can you help out.

14         Q.    Okay.   And then after that you helped her out

15   again?

16         A.    That's correct.

17         Q.    Okay.   Now, on -- at any time during any --

18   how many times have you represented Gabriel Miller in

19   total, different charges?

20         A.    There were -- of record representation, there

21   were these two times, the family violence and the theft

22   by shoplifting.

23               There was an off-the-record representation of

24   him when he violated his probation, his DUI probation.

25   I don't recall if I filed a record of appearance on

Trustpoint.One   Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1    that, but I do recall negotiating with the probation

2    officer to try to get it resolved.

3            I may have filed a record of appearance,

4    though, I can't recall, so possibly two.

5        Q.    So the first time was theft by shoplifting,

6    second time was family, and the third time could have

7    been this off-the-record help with the DUI?

8        A.    Correct.

9        Q.    Were you paid for the off-the-record help with

10   the DUI?

11       A.    No.  Cathy Carter said that she would pay me

12   when I went to the jail to visit with her son.  She was

13   in -- she was waiting in the intake area.

14           And she said, look, DeMone, I know Gabriel has

15   not paid you for the other representation; I'm going to

16   make sure you get paid.  And I never received a dime

17   from her or him.

18       Q.    Now, with the DUI probation violation, did you

19   ever receive a call from Paul Howard on that one?

20       A.    I can't say that I did.  I can't recall.

21       Q.    So you may have or may not have?

22       A.    May have, may not have.  I can't recall.

23       Q.    Okay.  Now, at any time did Paul Howard ever

24   pay you money for the representation of Gabriel Miller?

25       A.    Never.

1        Q.   All right.  Okay.  Let me ask you something

2    about just in general.  You were in the workplace.  What

3    building were you in?  Were you in the same building

4    that Paul Howard was in when you actually worked as an

5    attorney at the district attorney's office in Fulton

6    County?

7        A.   Yes.

8        Q.   Did you ever observe Paul Howard, based on

9    your understanding of what flirting means, flirting with

10   women?

11       A.   No.

12            MR. GREEN:  Object to the form.

13   BY MR. WILLIAMS:

14       Q.   Okay.  Did you ever know of him dating anyone

15   in the office?

16       A.   No, with the caveat being this:  I never knew

17   of him dating anyone, but I remember Cathy Carter -- I

18   remember there was an incident where I was being

19   complimented by my executive assistant and she was

20   saying that I was doing a good job.  This was when I

21   first got to Major Case.

22            And Cathy Carter was standing with her.  And

23   Cathy Carter chimed in and she said, DeMone, you know --

24   and I would know -- he really does thinks highly of you,

25   referring to Mr. Howard.  He thinks very highly of you

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1    and, believe you, I would know.

2            And I took that to mean that there was some

3    kind of pillow talk between her and Mr. Howard, but I

4    didn't know for certain.

5        Q.    Okay.

6            MR. GREEN:    Object to the responsiveness of

7        the answer.

8    BY MR. WILLIAMS:

9        Q.    Did you yourself personally witness by sight

10    or sound what you would consider comments or actions

11    that have -- were sexual in nature from Mr. Howard

12    towards a female employee?

13        A.    I have never seen Mr. Howard act in any way

14    flirtatious or in any way nonprofessional towards any

15    employee.  I have never seen that.

16        Q.    Okay.  And you said -- I'm sorry, were you

17    located in the same building as him?

18        A.    Yes.

19        Q.    Okay.  Okay.  I want to just put on record --

20    I'm not going to ask you for -- to identify necessarily

21    these documents.  I just want you to take a look at

22    this, DeMone.  Do you see the shared screen?

23        A.    Yes.

24        Q.    Do you see it says, "Party name:  Miller,

25    Gabriel Vonzell?"

1         A.    Yes.

2         Q.    And it says, "Defendant."  And it says

3    attorney name, "Lee, DeMone"?

4         A.    Yes.

5         Q.    Would that Lee DeMone be you?

6         A.    Yes.

7         Q.    And then this -- do you see where it says

8    "Entry of Appearance?"

9         A.    Yes.

10         Q.    "State of Georgia v. Gabriel V. Miller?"

11         A.    Yes.

12         Q.    And then at the bottom it says DeMone Lee

13    with a signature.  Would that signature be yours?

14         A.    Yes.

15              MR. WILLIAMS:  The court reporter, you did

16         mark that as Plaintiff's Exhibit No. 1, correct?

17              COURT REPORTER:  I will.  If you'll scroll to

18         the top and just let me make sure I know what it

19         is.  Okay.  That will be marked as Plaintiff's

20         Exhibit 1.

21              (Plaintiff's Exhibit No. 1 marked.)

22              MR. WILLIAMS:  You can mark this as

23         Plaintiff's Exhibit 2.

24              (Plaintiff's Exhibit No. 2 marked.)

25    BY MR. WILLIAMS:

Trustpoint.One  Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1        Q.   Mr. Lee, do you see right there where it says

 2   arraignment, the second page, arraignment?

 3        A.   Yes.

 4        Q.   And then it says Defendant and then it says

 5   Defendant's Counsel.  Is that your signature above

 6   defendant's counsel?

 7        A.   Yes.

 8             (Plaintiff's Exhibit No. 3 marked.)

 9   BY MR. WILLIAMS:

10        Q.   Okay.  This is Plaintiff's Exhibit No. 3.

11   And then if you could take a look at this same thing.

12   It says Defendant, Defendant's Attorney.  Where it says

13   Defendant's Attorney, is that your signature?

14        A.   Yes.

15             MR. WILLIAMS:  Okay.  All right.  And then,

16        Noah, if you have questions, go right ahead.

17             MR. GREEN:  I don't have any.  No questions.

18   BY MR. WILLIAMS:

19        Q.   Attorney Lee, I apologize for even having to

20   depose you, but as you can see, I kept it brief and to

21   the point.

22        A.   You did.

23        Q.   I do appreciate you taking the time today.

24   Appreciate your honesty and frankness.  If there is

25   anything that you would like to add, feel free.  But if
```

1   not, we can conclude this deposition.

2       A.   No, there is nothing I would like to add.

3       Q.   All right.  Thank you.

4            MR. GREEN:  Thank you, Mr. Williams.  It was

5       nice meeting you.

6            THE WITNESS:  Same with you all.  Take care.

7            COURT REPORTER:  Noah, would you like a copy

8       of this transcript?

9            MR. GREEN:  I don't, not right now.

10           THE WITNESS:  And, Mr. Lee, are we going to

11      waive signature or reserve?

12           THE WITNESS:  We'll waive.

13           COURT REPORTER:  Thank you.

14           (Deposition concluded at 2:51 p.m.)

15                            * * *

16

17

18

19

20

21

22

23

24

25

```
 1                        DISCLOSURE
 2   STATE OF GEORGIA:
 3   COBB COUNTY:
                     DEPOSITION OF:  DEMONE LEE
 4
             Pursuant to Article 10.B. of the Rules and
 5
     Regulations of the Board of Court Reporting of Judicial
 6
     Council of Georgia, I make the following disclosure:
 7
             I am a Georgia Certified Court Reporter acting
 8
     as an agent of Trustpoint.One, who was contacted by the
 9
     offices of HDR Law Firm, to provide court reporting
10
     services for this deposition.  I will not be taking this
11
     deposition under any contract that is prohibited by
12
     O.C.G.A. 15-14-37 (a) and (b).
13
             Trustpoint.One has no contract to provide
14
     reporting services with any party to the case, and
15
     counsel in the case, or any reporter or reporting agency
16
     from whom a referral might have been made to cover this
17
     deposition.  Trustpoint.One will charge its usual and
18
     customary rates to all parties in the case, and a
19
     financial discount will not be given to any party to
20
     this litigation.
21
22
23
24
     _____, CCR# B-2007 DATE:___07/10/22_____
25   Debbie C. Hennings
```

1                            CERTIFICATE

2

3    STATE OF GEORGIA:

4    COBB COUNTY:

5

             I hereby certify that the foregoing transcript
6
     was taken down, as stated in the caption, and the
7
     questions and answers thereto were reduced to
8
     typewriting under my direction; that the foregoing pages
9
     1 through 21 represent a true and correct transcript of
10
     the evidence given upon said hearing.
11
             The witness did not reserve the right to read
12
     and sign the transcript.
13
             This, the 8th day of July 2022.
14

15

16

17

18

19

20

21

22

23                           _____

24                           DEBBIE C. HENNINGS, CCR-B-2007
                             My commission expires the
25                           1st day of April 2023

## WORD INDEX

**< 1 >**
**1** *2*:8 *11*:*15*, *16*, *20*
*16*:*16*, *20*, *21* *20*:*4*
**1:20-CV-01674-TWT-**
**JSA** *1*:*5*
**10.B** *19*:*3*
**11** *2*:*3*, *8*
**118469** *1*:*25*
**129** *3*:*9*
**15-14-37** *19*:*3*
**15-14-37(a** *3*:*14*
**16** *2*:*8*
**17** *2*:*8*
**1st** *20*:*25*

**< 2 >**
**2** *2*:8 *16*:*23*, *24*
**2:32** *1*:*14*
**2:51** *18*:*14*
**200** *3*:*4*
**2011** *6*:*4*, *6*, *13*, *17*
**2016** *6*:*4*, *6*, *18* *7*:*3* *8*:*5*
**2022** *1*:*13* *20*:*4*
**2023** *20*:*25*
**21** *20*:*4*

**< 3 >**
**3** *2*:8 *17*:*8*, *10*
**3017** *3*:*9*
**30303** *3*:*5*
**30305** *3*:*10*

**< 4 >**
**404-577-0080** *3*:*5*
**404-841-1275** *3*:*10*
**44** *3*:*4*

**< 5 >**
**5** *1*:*13*

**< 8 >**
**8th** *20*:*4*

**< 9 >**
**9-11-29(a** *3*:*13*

**< A >**
**Accusation** *2*:*8*
**act** *15*:*13*
**acting** *19*:*3*
**ACTION** *1*:*4*
**actions** *15*:*10*
**actual** *6*:*14*
**add** *17*:*25* *18*:*2*
**agency** *19*:*3*
**agent** *19*:*3*
**ahead** *6*:*21*, *22* *17*:*16*
**allegations** *5*:*10*

**allowable** *4*:*20*
**answer** *15*:*7*
**answers** *20*:*4*
**apologize** *17*:*19*
**appearance** *12*:*25* *13*:*3*
*16*:*8*
**appeared** *1*:*21*
**appreciate** *4*:*12* *17*:*23*,
*24*
**April** *20*:*25*
**area** *13*:*13*
**arraignment** *17*:*2*
**Article** *19*:*3*
**assistant** *6*:*16*, *25* *7*:*1*, *2*
*14*:*19*
**Atlanta** *3*:*5*, *10*
**Attorney** *4*:*11*, *24* *6*:*7*,
*16*, *25* *7*:*1*, *3*, *5*, *10* *14*:*5*
*16*:*3* *17*:*12*, *13*, *19*
**attorney's** *5*:*20*, *25* *6*:*3*,
*6*, *15* *7*:*8* *8*:*5* *14*:*5*

**< B >**
**B-2007** *19*:*3*
**back** *12*:*5*
**background** *5*:*19*
**based** *14*:*8*
**basically** *10*:*23*
**began** *7*:*15*
**BEHALF** *3*:*2*, *7*
**believe** *6*:*4* *12*:*6* *15*:*1*
**believes** *5*:*12*
**BERNARD** *3*:*3*
**best** *9*:*24*
**Board** *19*:*3*
**Bolling** *3*:*9*
**bottom** *16*:*12*
**brief** *17*:*20*
**Broad** *3*:*4*
**brought** *6*:*13*
**build** *8*:*9* *9*:*14*
**building** *14*:*3* *15*:*17*

**< C >**
**call** *13*:*19*
**called** *11*:*8* *12*:*9*
**calling** *10*:*23*
**calls** *11*:*7*
**CAPACITY** *1*:*6*
**caption** *20*:*4*
**care** *18*:*6*
**career** *8*:*6*
**CARTER** *1*:*1* *5*:*9* *9*:*16*,
*25* *10*:*2*, *7*, *23* *11*:*17*
*13*:*11* *14*:*17*, *22*, *23*
**Carter's** *5*:*14* *9*:*6* *11*:*7*
**Case** *2*:*8* *5*:*9*, *13* *7*:*21*
*10*:*8*, *12*, *14*, *18*, *19*, *20*, *21*,
*22* *11*:*10*, *14*, *19*, *25* *12*:*1*,
*2*, *9* *14*:*21* *19*:*3*
**cases** *7*:*15* *10*:*14*

**CATHY** *1*:*1* *5*:*9*, *14* *9*:*6*,
*16* *10*:*7*, *23* *11*:*7*, *17*
*13*:*11* *14*:*17*, *22*, *23*
**caveat** *14*:*16*
**CCR** *1*:*12* *19*:*3*
**CCR-B-2007** *20*:*24*
**certain** *15*:*4*
**CERTIFICATE** *20*:*1*
**Certified** *19*:*3*
**certify** *20*:*4*
**change** *6*:*17*
**changed** *6*:*22*, *25* *7*:*15*
**charge** *10*:*16*, *17* *19*:*3*
**charges** *12*:*19*
**chief** *7*:*1*, *2*
**Children** *7*:*18*
**chimed** *14*:*23*
**CIVIL** *1*:*4*
**Clayton** *12*:*4*
**COBB** *19*:*3* *20*:*4*
**coincided** *7*:*6*
**colleague** *5*:*8* *10*:*7*
**colleagues** *11*:*1*, *2*
**come** *7*:*9* *9*:*9*
**command** *6*:*10*
**Commencing** *1*:*14*
**comments** *15*:*10*
**commission** *20*:*24*
**complimented** *14*:*19*
**conclude** *18*:*1*
**concluded** *18*:*14*
**consider** *15*:*10*
**contact** *7*:*9*, *12*, *22* *9*:*15*,
*16*
**contacted** *9*:*10*, *13* *10*:*10*
*19*:*3*
**contract** *19*:*3*
**conversation** *9*:*25* *10*:*4*
**copy** *18*:*7*
**correct** *4*:*25* *5*:*1* *11*:*12*
*12*:*11*, *16* *13*:*8* *16*:*16*
*20*:*4*
**correctly** *11*:*3*
**Council** *19*:*3*
**counsel** *4*:*1* *17*:*5*, *6* *19*:*3*
**Counts** *2*:*8*
**County** *5*:*24* *6*:*2*, *6*, *7*
*7*:*4*, *8* *12*:*4* *14*:*6* *19*:*3*
*20*:*4*
**COURT** *1*:*1*, *20* *2*:*8*, *17*
*3*:*14* *4*:*1*, *2* *8*:*16*, *18*
*16*:*15*, *17* *18*:*7*, *13* *19*:*3*
**cover** *19*:*3*
**Crimes** *7*:*17*
**Criminal** *2*:*8*
**currently** *8*:*10*, *11*
**customary** *19*:*3*

**< D >**
**DATE** *19*:*3*

**dating** *14*:*14*, *17*
**day** *20*:*4*, *25*
**days** *12*:*5*
**Debbie** *1*:*12* *19*:*25*
*20*:*24*
**DEFENDANT** *3*:*7* *16*:*2*
*17*:*4*, *12*
**Defendants** *1*:*7*
**Defendant's** *17*:*5*, *6*, *12*,
*13*
**DEMONE** *1*:*10* *2*:*3* *4*:*6*,
*14*, *15*, *20* *8*:*17* *9*:*2*
*13*:*14* *14*:*23* *15*:*22* *16*:*3*,
*5*, *12* *19*:*3*
**D-E-M-O-N-E** *4*:*16*
**depending** *5*:*13*
**depose** *17*:*20*
**DEPOSITION** *1*:*9* *4*:*19*,
*22* *18*:*1*, *14* *19*:*3*
**deputy** *7*:*5*
**Description** *2*:*8*
**different** *12*:*19*
**dime** *13*:*16*
**direct** *7*:*19* *8*:*1*
**direction** *20*:*4*
**directly** *6*:*9* *7*:*15*
**disclosure** *3*:*15* *19*:*1*, *3*
**discount** *19*:*3*
**Disposition** *2*:*8* *10*:*11*
**DISTRICT** *1*:*1* *5*:*20*, *24*
*6*:*3*, *6*, *7*, *14*, *16*, *25* *7*:*1*, *3*,
*5*, *8*, *10* *8*:*4* *14*:*5*
**division** *7*:*12*, *18*
**documents** *15*:*21*
**doing** *4*:*11* *10*:*25* *14*:*20*
**door** *8*:*9*
**DUI** *12*:*24* *13*:*7*, *10*, *18*
**duly** *4*:*7*

**< E >**
**electronically** *2*:*17*
**emailed** *8*:*19*
**employee** *15*:*12*, *15*
**ended** *10*:*25* *11*:*14*
**engagement** *5*:*3* *9*:*21*
**Entry** *16*:*8*
**Ernest** *11*:*3*
**ESQUIRE** *3*:*3*, *8*
**eventually** *11*:*8*
**evidence** *20*:*4*
**exactly** *6*:*23*
**EXAMINATION** *4*:*9*
**examined** *4*:*7*
**example** *7*:*17*
**executive** *14*:*19*
**Exhibit** *2*:*8* *11*:*15*, *16*,
*20* *16*:*16*, *20*, *21*, *23*, *24*
*17*:*8*, *10*
**exhibits** *2*:*17* *8*:*17*
**expires** *20*:*24*

explain  6:22
extent  11:18

< F >
facts  5:13
familiar  5:15
family  12:21  13:6
federal  4:21
feel  17:25
female  15:12
FILE  1:4
filed  5:9  12:25  13:3
Final  2:8
financial  19:3
Firm  3:3  19:3
first  4:7  9:9, 11, 12, 18
  10:20  11:13  12:2  13:5
  14:21
flirtatious  15:14
flirting  14:9
following  19:3
follows  4:8
foregoing  20:4
form  14:12
former  10:7
frankness  17:24
free  17:25
frequent  7:9, 18, 22
frequently  7:16
friend  11:3
full  4:12
fully  9:22
Fulton  5:24  6:2, 5, 7
  7:8  14:5

< G >
Gabriel  5:15  9:4, 10, 17,
  20  10:1, 5, 10  12:18
  13:14, 24  15:25  16:10
general  14:2
GEORGIA  1:1  3:5, 10
  16:10  19:2, 3  20:3
given  19:3  20:4
Go  6:21, 22  17:16
going  5:2, 6, 18  8:21
  11:15, 22  13:15  15:20
  18:10
good  14:20
governs  4:22
GREEN  3:8  4:5  8:25
  14:12  15:6  17:17  18:4,
  9

< H >
handful  11:17
handy  8:18
HDR  3:3  19:3
hearing  20:4
hearkening  12:5
help  10:9  11:1, 2, 6, 9

12:13  13:7, 9
helped  12:14
Henefeld  3:8
Hennings  1:12  19:25
  20:24
hey  10:6  11:8  12:10
highly  14:24, 25
honest  9:23
honesty  17:24
HOWARD  1:5  5:10
  6:7, 9  7:9, 13, 20, 23  8:2
  9:13, 19  10:3, 4  11:6
  13:19, 23  14:4, 8, 25
  15:3, 11, 13

< I >
identify  15:20
incident  14:18
including  1:20
INDIVIDUAL  1:5
initial  9:18
initially  7:11  8:7  10:13,
  15
Inquiry  2:8
intake  13:13
Integrity  7:24
interfered  11:18
involved  11:11  12:9, 10
issue  5:12
issues  5:11
its  19:3

< J >
jail  13:12
Job  1:25  14:20
Judicial  19:3
July  1:13  20:4

< K >
kept  10:23  17:20
kind  5:2, 3  12:5  15:3
knew  14:16
know  7:6  9:4, 22  10:6
  12:8  13:14  14:14, 23, 24
  15:1, 4  16:18
knowledge  9:24

< L >
Law  3:3  4:21  19:3
lawsuit  5:10
lawyer  7:7
LEE  1:10  2:3  4:6, 11,
  14, 17, 20, 24  8:17  16:3,
  5, 12  17:1, 19  18:10
  19:3
L-E-E  4:17
left  8:4
level  7:12, 22
litigation  19:3
located  15:17

look  13:14  15:21  17:11

< M >
Madam  8:16
Major  7:21  14:21
making  5:10
man  10:6  11:8  12:10
MARIO  3:3
mark  6:24  11:16  16:16,
  22
marked  11:20  16:19, 21,
  24  17:8
mean  10:3  15:2
means  14:9
meeting  18:5
meetings  7:19  8:1
met  7:25
Miller  5:15, 16, 22  9:5,
  10, 17, 21  10:1, 5, 10
  12:18  13:24  15:24
  16:10
mind  11:8
money  13:24
move  5:22
mwilliams@hdrattorneys.
  com  3:6

< N >
name  4:12  5:14  15:24
  16:3
nature  15:11
NE  3:9
necessarily  6:10  15:20
needed  11:1
negotiating  13:1
Nesmith  11:4
never  13:16, 25  14:16
  15:13, 15
ngreen@henefeldgreen.co
  m  3:11
nice  18:5
NOAH  3:8  8:23  17:16
  18:7
nonprofessional  15:14
NORTHERN  1:1
NOTE  2:17
NW  3:4

< O >
O.C.G.A  3:13  19:3
Object  14:12  15:6
objection  4:2, 4, 5
observe  14:8
office  5:20, 25  6:3, 6, 15
  7:8  8:5  14:5, 15
officer  13:2
offices  19:3
OFFICIAL  1:6
off-the-record  12:23
  13:7, 9
Oftentimes  7:22

Okay  5:23  6:20  7:7
  8:4, 10, 13, 15  9:9, 18, 24
  11:2  12:1, 7, 14, 17
  13:23  14:1, 14  15:5, 16,
  19  16:19  17:10, 15
orient  5:6

< P >
p.m  1:14  18:14
Page  2:8  17:2
pages  20:4
paid  9:18  13:9, 15, 16
particular  8:3
parties  1:20  19:3
partners  8:13
Party  15:24  19:3
PAUL  1:5  5:10  6:7, 9
  7:9  10:4  11:6  12:9
  13:19, 23  14:4, 8
pay  9:21  10:20  13:11,
  24
payment  9:23
permissible  4:20
personally  15:9
petty  10:15, 16  12:2, 4
pillow  15:3
Plaintiff  1:3  3:2  4:4
  5:12
Plaintiffs  2:8
Plaintiff's  11:15, 16, 20
  16:16, 19, 21, 23, 24  17:8,
  10
please  11:9
point  5:3  17:21
possibly  13:4
practice  5:21  8:9  9:14
practitioner  8:7, 11
pretty  8:8
private  5:21
probably  6:23
probation  12:24  13:1, 18
professional  8:5
prohibited  19:3
prosecutor  12:6
provide  19:3
Public  7:24
pull  8:15  11:13, 22
purposes  4:21
pursuant  1:11  3:13
  19:3
pursue  8:6
put  15:19

< Q >
questions  5:7, 19, 21
  17:16, 17  20:4

< R >
rare  7:12
rates  19:3

**read**  20:*4*
**really**  10:*21, 25*  14:*24*
**recall**  6:*23*  9:*16, 22*
  10:*11, 12, 19*  11:*3*  12:*25*
  13:*1, 4, 20, 22*
**receive**  13:*19*
**received**  13:*16*
**record**  4:*2, 12*  12:*20, 25*
  13:*3*  15:*19*
**reduced**  20:*4*
**referral**  9:*13*  10:*1, 5*
  19:*3*
**referred**  9:*19*
**referring**  14:*25*
**refused**  11:*7*  12:*8*
**Regulations**  19:*3*
**relates**  7:*14*
**relevant**  5:*12*
**remember**  10:*15*  14:*17,
  18*
**remotely**  1:*21*  4:*3*
**report**  6:*9*  7:*16*
**reporter**  1:*20*  2:*17*  3:*15*
  4:*1, 3*  8:*17, 18*  16:*15, 17*
  18:*7, 13*  19:*3*
**Reporting**  19:*3*
**represent**  10:*21, 24*  20:*4*
**representation**  5:*14, 22*
  9:*19*  10:*5*  11:*18*  12:*20,
  23*  13:*15, 24*
**represented**  9:*7, 11, 12*
  10:*12*  11:*15*  12:*18*
**representing**  9:*10*  10:*15*
  11:*14*
**reserve**  18:*11*  20:*4*
**resolved**  13:*2*
**responsibilities**  7:*14*
**responsiveness**  15:*6*
**right**  8:*18, 21*  10:*18*
  12:*3*  14:*1*  17:*1, 15, 16*
  18:*3, 9*  20:*4*
**role**  7:*6, 9, 14*
**RPR**  1:*12*
**rules**  5:*2*  19:*3*

**< S >**
**saying**  11:*1*  14:*20*
**says**  15:*24*  16:*2, 7, 12*
  17:*1, 4, 12*
**say-so**  6:*12*
**screen**  8:*21, 22, 24*  9:*2*
  11:*24*  15:*22*
**scroll**  16:*17*
**se**  7:*6*
**second**  10:*22*  11:*10, 25*
  12:*1, 9*  13:*6*  17:*2*
**Section**  3:*13, 14*
**see**  8:*23*  9:*2*  10:*8, 11*
  11:*13, 23*  15:*22, 24*  16:*7*
  17:*1, 20*

**seen**  15:*13, 15*
**senior**  6:*16, 25*  7:*1, 2*
**services**  19:*3*
**severity**  7:*15*
**sexual**  15:*11*
**shake**  5:*13*
**share**  8:*21*
**shared**  8:*22, 23*  9:*2*
  11:*24*  15:*22*
**shoplifting**  10:*17*  12:*6,
  22*  13:*5*
**sight**  15:*9*
**sign**  20:*4*
**signature**  16:*13*  17:*5, 13*
  18:*11*
**signed**  9:*21*
**sir**  4:*14, 18*  5:*5*
**skip**  5:*2*
**solid**  12:*10, 12*
**solo**  8:*7, 11*
**son**  9:*6*  10:*8*  13:*12*
**sons**  5:*14*
**sore**  9:*20*
**sorry**  6:*21*  15:*16*
**sound**  15:*10*
**speaking**  8:*8*
**spell**  4:*15*
**spot**  9:*20*
**standing**  14:*22*
**started**  7:*11*
**State**  2:*8*  16:*10*  19:*2*
  20:*3*
**stated**  20:*4*
**statement**  3:*15*
**STATES**  1:*1*
**stay**  7:*2*
**step**  10:*24*
**stipulate**  4:*1*
**stipulations**  1:*11*
**Street**  3:*4*
**structure**  6:*11*
**submitted**  2:*17*
**subsequent**  10:*18, 19*
**Suite**  3:*4, 9*
**supervisor**  7:*19, 23*  8:*1*
**Sure**  10:*6*  11:*23*  13:*16*
  16:*18*
**swearing**  4:*3*
**sworn**  4:*7*

**< T >**
**take**  10:*9*  15:*21*  17:*11*
  18:*6*
**taken**  1:*11*  20:*4*
**talk**  15:*3*
**Tell**  9:*24*  10:*3*
**tendered**  3:*15*
**tenure**  6:*24*  7:*7*
**testified**  4:*7*  12:*8*
**Thank**  18:*3, 4, 13*

**theft**  10:*15, 16, 17, 20*
  12:*2, 5, 6, 21*  13:*5*
**thereto**  20:*4*
**thing**  17:*11*
**think**  7:*25*  11:*4*
**thinks**  14:*24, 25*
**third**  13:*6*
**third-year**  6:*24*
**three**  8:*2*
**three-year**  6:*24*
**time**  6:*5*  7:*3, 25*  9:*11,
  12*  11:*9*  12:*7, 17*  13:*5, 6,
  23*  17:*23*
**times**  12:*18, 21*
**title**  6:*14, 17*
**titled**  7:*5*
**today**  17:*23*
**top**  16:*18*
**total**  12:*19*
**transcript**  3:*16*  18:*8*
  20:*4*
**trial**  7:*12*
**trouble**  10:*8*
**true**  20:*4*
**Trustpoint.One**  19:*3*
**try**  5:*8*  13:*2*
**trying**  8:*9*  10:*24*
**Tuesday**  1:*13*
**turn**  5:*7*
**two**  12:*21*  13:*4*
**type**  8:*5*
**typewriting**  20:*4*

**< U >**
**Uh**  11:*25*
**ultimately**  6:*11*
**understanding**  4:*24*  7:*4*
  14:*9*
**Unit**  7:*22, 24*
**UNITED**  1:*1*
**units**  8:*2*
**urge**  11:*6*
**urged**  11:*2*
**urging**  11:*1*
**usual**  19:*3*

**< V >**
**various**  5:*10*
**violated**  12:*24*
**violation**  13:*18*
**violence**  12:*21*
**visit**  13:*12*
**Vonzell**  9:*5*  15:*25*
**vs**  1:*4*

**< W >**
**waiting**  13:*13*
**waive**  18:*11, 12*
**want**  8:*15*  9:*4*  10:*9, 21,
  25*  11:*11, 23*  15:*19, 21*

**wanted**  10:*8*
**Way**  3:*9*  15:*13, 14*
**Well**  9:*20*  12:*4*
**went**  5:*20*  13:*12*
**We're**  11:*22*
**WILLIAMS**  2:*3*  3:*3*
  4:*4, 10, 19, 23*  8:*16, 20,
  23*  9:*1*  11:*21*  14:*13*
  15:*8*  16:*15, 22, 25*  17:*9,
  15, 18*  18:*4*
**witness**  4:*3*  15:*9*  18:*6,
  10, 12*  20:*4*
**Women**  7:*18*  14:*10*
**work**  5:*24*  6:*2*
**worked**  5:*19*  6:*5*  14:*4*
**working**  6:*14*
**workplace**  14:*2*

**< Y >**
**ya**  4:*11*
**yeah**  11:*19*  12:*4*
**years**  6:*2*